UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Michael Dichard

    v.                                        Civil No. 17-CV-00338-AJ
                                            Opinion No. 2017 DNH 243

Robert Morgan, et al.

**MEMORANDUM AND ORDER**

Plaintiff Michael Dichard brought this action in state court against defendants Robert Morgan, Laureen Morgan, James Morgan, and Jay-Mor Enterprises, Inc. ("Jay-Mor"), alleging counts stemming from the termination of Dichard's employment with Jay-Mor. Doc. no. 1-2. The defendants removed the matter here, and Jay-Mor asserted a counterclaim against Dichard alleging, among other things, that Dichard misappropriated Jay-Mor's trade secrets in violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, et seq. See doc. no. 3 at 6. Dichard moves for judgment on the pleadings on this trade secrets claim. Doc. no. 8. Jay-Mor objects. Doc. no. 10. For the reasons that follow, Dichard's motion is granted, albeit without prejudice to Jay-Mor filing an amended counterclaim within fourteen days of the issuance of this Order.

**Standard of Review**

"The standard of review of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same

as that for a motion to dismiss under Rule 12(b)(6)." Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007). The court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citation and quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense." Id. at 679.

## **Background**

Accepting the factual allegations set forth in Jay-Mor's counterclaim as true, the relevant facts are as follows.

Jay-Mor is a family-owned demolition contracting business located in Hudson, New Hampshire. See doc. no. 3, ¶ 6. Jay-Mor's services include demolition, site work, asbestos/hazardous materials removal, surveys, and equipment and truck rental. Id. ¶ 7. Jay-Mor offers its services in New Hampshire, Massachusetts, and Maine. See id. ¶ 8.

Dichard is a former employee of Jay-Mor who represented Jay-

Mor in a senior-level business development role.  Id. ¶ 9.  In exchange for his services, Jay-Mor provided Dichard with an "unusually generous compensation package," which was memorialized in a contract dated September 9, 2014.  Id. ¶ 10.  Dichard was responsible for identifying and developing new business opportunities on behalf of Jay-Mor.  Id. ¶ 12.  As such, Dichard served Jay-Mor in a position of trust and confidence and had "unfettered" access to Jay-Mor's confidential business information. Id. ¶¶ 12-13.

Like other businesses in Jay-Mor's industry, Jay-Mor relied on a variety of confidential business information.  Id. ¶ 14.  During Dichard's employment, much of Jay-Mor's confidential information was stored in files pertaining to jobs on which Jay-Mor was bidding.  Id.  These files included information on how Jay-Mor calculated its bids, cost data, overhead, and pricing-margin information, as well as "bid worksheets" containing Jay-Mor's method of bidding.  Id.  Jay-Mor asserts that all of this information was non-public and would be of tremendous value to competitors, prospective subcontractors, vendors, and suppliers. See id. ¶ 14.

When he was employed with Jay-Mor, Dichard and other employees developed two large demolition project opportunities for Jay-Mor. Id. ¶ 16.  One was located in Ayer, Massachusetts for the Pan Am Railway ("Pan Am project").  Id.  The other was located in Nashua, New Hampshire for the Sacred Heart School ("Sacred Heart project").

Id. The estimated potential revenue for both projects exceeded $1 million. Id.

On or about March 2, 2017, Dichard tendered his resignation to Jay-Mor. Id. ¶ 20. In his resignation letter, Dichard specifically threatened to divert the revenue from the Pan Am and Sacred Heart projects to other demolition contractors to secure monies that he contended were owed to him by Jay-Mor. Id. ¶ 21.

After Dichard resigned, Jay-Mor conducted an investigation and discovered that Dichard had absconded with the confidential project files for the Pan Am and Sacred Heart projects. Id. ¶ 22. Jay-Mor alleges, upon information and belief, that Dichard stole or improperly retained additional Jay-Mor confidential information and trade secrets when he departed. Id. ¶ 23. Jay-Mor later learned that Dichard offered the Pan Am project to other demolition contractors. Id. ¶ 24. Jay-Mor believes that Dichard is shopping the Pan Am and Sacred Heart projects to additional demolition contractors, and is seeking to tie his new employer into the deal in order to ensure that he is paid commission. See id. ¶ 25.

Jay-Mor filed its trade secrets claim on the basis of these allegations. Jay-Mor specifically contends that Dichard absconded and willfully misappropriated Jay-Mor's trade secrets and confidential information, resulting in damages in an amount "yet to be determined." Id. ¶¶ 44, 46, 47.

**Discussion**

Dichard moves for judgment on the pleadings on the trade secrets claim. Dichard specifically asserts that Jay-Mor has failed to sufficiently allege: (1) that Dichard has disclosed any confidential information to a third party; (2) that Jay-Mor took reasonable steps to protect its information; and (3) that the information in question constitutes a trade secret. See doc. no. 8.

The Defend Trade Secrets Act ("DTSA") creates a private cause of action in favor of the "owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). Under the DTSA, the definition of "trade secret" includes, inter alia, "all forms and types of financial, business, scientific, technical, economic, or engineering information," provided that the owner "has taken reasonable measures to keep such information secret" and the information "derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

Only enacted in 2016, there is a relative paucity of case law

analyzing the elements of a claim under the DTSA.[1]  There does, however, appear to be a general consensus among courts that a party asserting a DTSA claim must sufficiently allege in its complaint that it has taking reasonable measures or steps to keep secret the information it believes was misappropriated.[2]  See, e.g., Xoran Holdings LLC v. Luick, No. 16-13703, 2017 WL 4039178, at *6 (E.D. Mich. Sept. 13, 2017); Deluxe Fin. Servs., LLC v. Shaw, No. CV 16-3065 (JRT/HB), 2017 WL 3327570, at *3 (D. Minn. Aug. 3, 2017); Wang v. Golf Tailor, LLC, No. 17-cv-898-LB, 2017 WL 2861111, at *6 (N.D. Cal. July 5, 2017); Singer v. Stuerke, No. 2:16-cv-2526-KJD-GWF, 2017 WL 2603305, at *3 (D. Nev. June 14, 2017); Gov't Employees Ins. Co. v. Nealey, __ F. Supp. 3d __, 2017 WL 2572519, at *8 (E.D. Pa. June 13, 2017); Raben Tire Co., LLC v. McFarland, No. 5:16-cv-141-TBR, 2017 WL 741569, at *2 (W.D. Ky. Feb. 24, 2017); Mission

---

[1] There are no decisions from the First Circuit or this district analyzing the FTCA.  As best the court can tell, there are only five federal appellate decisions that reference this statute, none of which is particularly helpful in the present context.  See generally First W. Capital Mgmt. Co. v. Malamed, __ F.3d __, 2017 WL 4872570 (10th Cir. Oct. 30, 2017); Waymo LLC v. Uber Techs., Inc., 870 F.3d 1342 (Fed. Cir. 2017); Fres-co Sys. USA, Inc. v. Hawkins, 690 F. App'x 72 (3d Cir. 2017); United States v. Liew, 856 F.3d 585 (9th Cir. 2017); United States v. Nosal, 844 F.3d 1024 (9th Cir. 2016), cert. denied, No. 16-1344, 2017 WL 1807382 (U.S. Oct. 10, 2017).  The court accordingly relies on persuasive authority from other district courts, as well state-court cases analyzing misappropriation of trade secrets claims under state law.  See infra p. 8 n. 4.

[2] This is unsurprising, as the statutory definition of "trade secret" under the DTSA includes this requirement.  See 18 U.S.C. § 1839(3).

Measurement Corp. v. Blackbaud, Inc., 216 F. Supp. 3d 915, 921 (N.D. Ill. 2016); Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc., No. 15-cv-211 (LGS) (RLE), 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016); M.C. Dean, Inc. v. City of Miami Beach, Fla., 199 F. Supp. 3d 1349, 1357 (S.D. Fla. 2016). These cases reveal the follow basic pleading requirement: while "at the pleading stage, plaintiffs need only describe the . . . efforts to maintain the confidentiality of the information in general terms," Mission Measurement Corp., 216 F. Supp. 3d at 921 (brackets and citations omitted), this requires some affirmative step beyond merely "[i]ntending to keep the information secret . . . ." Singer, 2017 WL 2603305, at *3.

Here, Jay-Mor has failed to adequately plead that it took reasonable measures to preserve the secrecy of the information it alleges Dichard misappropriated. Jay-Mor's counterclaim does not, for example, allege that Jay-Mor's computer system or the documents in question had any particular security, such a restricted server, password protection, or encryption. See, e.g., Grow Fin. Fed. Credit Union v. GTE Fed. Credit Union, No. 8:17-cv-1239-T-30JSS, 2017 WL 3492707, at *3 (M.D. Fla. Aug. 15, 2017); Heralds of Gospel Found., Inc. v. Varela, No. 17-22281-CIV, 2017 WL 3868421, at *5 (S.D. Fla. June 23, 2017); Sleekez, LLC v. Horton, No. CV 16-09-BLG-SPW-TJC, 2017 WL 1906957, at *4 (D. Mont. Apr. 21, 2017), report and recommendation adopted, No. CV 16-09-BLG-SPW, 2017 WL 1929473 (D. Mont. May 9, 2017); Prot. Techs., Inc. v. Ribler, No.

3:17-cv-144-LRH-WGC, 2017 WL 923912, at *2 (D. Nev. Mar. 8, 2017).
Jay-Mor has similarly not asserted that its employees were trained regarding the sensitive nature of this information or that it otherwise made those who used the information subject to confidentiality provisions and limitations, such as nondisclosure agreements.  See, e.g., Grow Fin. Fed. Credit Union, 2017 WL 3492707, at *3; Syntel Sterling Best Shores Mauritius Ltd., 2016 WL 5338550, at *6; see also Heralds of Gospel Found., Inc., 2017 WL 3868421, at *5.  Nor, too, does Jay-Mor allege that it implemented any policies or procedures regarding the preservation of the information at issue.  See, e.g., Deluxe Fin. Servs., LLC, 2017 WL 3327570, at *3.³  Indeed, the only allegation Jay-Mor makes that can be construed as an affirmative act with respect to the information at issue is that it "was stored in files."  See doc. no. 3 ¶ 14.  Even when viewed in the light most favorable to Jay-Mor, this act — which, without further context, could seemingly apply to confidential and non-confidential information alike — does not support a plausible inference that Jay-Mor took some particular measure to preserve the secrecy of that information.⁴

---

³ These are merely examples of the types of allegations courts have found to be sufficient under the DTSA and accordingly should not be construed as an exhaustive list.

⁴ As the DTSA's definition of "misappropriation" is modeled on the Uniform Trade Secrets Act, which has been adopted in 48 states, see H.R. Rep. No. 114-529, at 5, cases analyzing trade secrets claims brought under state law are also instructive.  These cases do not alter the court's determination, however; indeed, a review

Jay-Mor appears to rely on its small size and relative lack of sophistication to contend that it has adequately alleged misappropriation of trade secrets in its counterclaim. The court is unpersuaded by this argument. Without foreclosing the possibility that a company's size and sophistication might have some bearing on whether the measures a company took were <u>reasonable</u> under the circumstances, the fact remains that Jay-Mor has not alleged that it did anything beyond storing its information in files to preserve the secrecy of that information. As discussed above, the case law establishes that a party must allege that it took <u>some</u> affirmative step to protect the secrecy of its information in order to state a claim for misappropriation of trade secrets. As Jay-Mor has not done so here, its trade secrets claim fails regardless of Jay-Mor's size and sophistication.

---

of federal decisions from courts in the First Circuit only further supports the conclusion that Jay-Mor has inadequately alleged its trade secrets claim here. <u>Compare</u> Karter v. Pleasant View Gardens, Inc., 248 F.Supp.3d 299, 312 (D. Mass. 2017)(holding that plaintiff "failed to plead that she took reasonable steps to maintain [the trade secrets] safety," where her complaint merely alleged that "she 'had in her possession certain confidential trade secrets,' that she 'took reasonable measures to maintain the confidentiality of the trade secrets.'") <u>with</u> Bruno International Ltd. V. Vicor Corp., No. 14-10037-DPW, 2015 WL 5447652, at *12 (D. Mass Sept. 16, 2015) (reasoning that plaintiff's specific request that defendant keep the information confidential was sufficient, on the pleadings, to allege that plaintiff took "reasonable, affirmative steps to protect its trade secrets."); <u>cf.</u> Incase Inc. v. Timex Corp., 488 F.3d 46, 53 (1st Cir. 2007) (concluding that a there was no evidence in the record to support a conclusion that the party bringing the trade secrets claim "took reasonable steps to preserve the secrecy" of its purported trade secrets).

In sum, Jay-Mor has not adequately alleged a necessary element of a misappropriations of trade secrets claim under the DTSA. Dichard's motion for judgment on the pleadings must accordingly be granted. This determination is without prejudice, however, to Jay-Mor amending its counterclaim to allege additional facts with respect to its DTSA claim. Any amendment must be filed no later than fourteen days from the date this Order is issued.

## Conclusion

For the reasons set forth above, Dichard's motion for judgment on the pleadings (doc. no. 8) is granted as to Jay-Mor's trade secrets claim without prejudice to Jay-Mor amending its counterclaim within fourteen days of the issuance of this Order.

SO ORDERED.

_____
Andrea K. Johnstone
United States Magistrate Judge

November 22, 2017

cc: J. Daniel Marr, Esq.
    Mark M. Whitney, Esq.

10